UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMIR SHADMANI,

    Plaintiff,

v.                                        Case No. 3:22-cv-1008-MMH-JBT

J. M. BARNES, individually, A. G. SCOTT, individually, and T. K. WATERS, in his official capacity as Sheriff of the City of Jacksonville, Florida,[1]

    Defendants.

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant Sheriff Pat Ivey's Motion to Dismiss Count V of Plaintiff's Complaint and Supporting Memorandum of Law (Doc. 9; Motion), filed November 8, 2022. In the Motion, the Sheriff requests that the Court dismiss Count V of Plaintiff Amir Shadmani's Complaint and Demand for Jury Trial (Doc. 1; Complaint), filed September 16, 2022, on the grounds that it fails to state a claim upon which relief can be granted. Shadmani timely filed a response in opposition to the Motion. See Plaintiff's Response in Opposition to Defendant Sheriff Ivey's Motion to Dismiss

---

[1] T.K. Waters became the Sheriff of the City of Jacksonville on November 20, 2022. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, T.K. Waters is substituted for Pat Ivey as Defendant in this suit. The parties should use the proper caption in all future filings.

Count V of Plaintiff's Complaint (Doc. 10; Response), filed November 29, 2022. Accordingly, this matter is ripe for review.

## I. Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also BellSouth Telecomm., 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.   Background[2]

On September 17, 2019, Shadmani made a late-night visit to a coffee shop owned by his friend and client. Complaint ¶ 10. Arriving shortly before 2:50 A.M., he legally parked his car in front of the shop. See id. ¶¶ 10–11. While the car was still running, Officers Barnes and Scott of the Jacksonville Sheriff's

---

[2] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

Office (JSO) approached the vehicle. See id. ¶ 11. Citing a rise in burglaries and asserting that Shadmani was illegally parked, Barnes ordered Shadmani out of the car, searched him, and—although stating that he was not under arrest—placed Shadmani in the back of the officers' police cruiser. Id. ¶¶ 11, 14–15. Shadmani complied with the officers' requests. Id. ¶ 14. The officers then claimed to see a white powder on a folder in the passenger seat and began searching Shadmani's car. Id. ¶¶ 15–18. Suspecting that the powder was cocaine, the officers decided to handcuff Shadmani using an "arm bar maneuver" to force his compliance. Id. ¶¶ 17–18. Shadmani requested an explanation, but the officers simply forced Shadmani's hand towards his upper back, pushed him against the police cruiser, and struck his lower back several times. Id. ¶ 20. "Believing he was being battered and unlawfully detained," Shadmani pulled away from the officers and tried to escape. Id. ¶ 21. The officers gave chase, tasing Shadmani and causing him to fall. Id. As Shadmani lay on the ground, the officers "pounce[d]" on him and punched him. Id. Shadmani made a final attempt to escape, but collapsed again as the officers continued to tase him. Id. The officers then "tackled" Shadmani, punching and striking him in his head, neck, face, and back. Id. During these events, Shadmani was "completely defenseless." Id. ¶ 22. After subduing Shadmani, the officers forcibly swabbed his nose before arresting him for possession of cocaine, possession of controlled substance paraphernalia, and

resisting an officer with violence. Id. ¶¶ 24–25. The officers never collected cocaine from the scene. Id. ¶ 17. Prosecutors ultimately dropped the drug charges entirely and reduced the remaining charge to resisting an officer without violence. Id. ¶ 26.

As a result of the incident, Shadmani suffered a broken nose, a broken arm, a large facial contusion, and other injuries, and required surgery to his nose and back. Id. ¶ 23. Seeking relief for these injuries, Shadmani now asserts claims against each officer, alleging in Counts I and II of the Complaint that they violated his Fourth and Fourteenth Amendment rights.[3] See id. ¶¶ 38–50. In addition to the claims against the individual officers, Shadmani brings three claims against the Sheriff in his official capacity as the Sheriff of the City of Jacksonville, Florida. In Count III, Shadmani asserts a claim for municipal liability under 42 U.S.C. § 1983. See id. ¶ 52. In Count IV, he brings a state-law battery claim against the Sheriff under a vicarious liability theory. See id. ¶¶ 61–64. And in Count V, Shadmani asserts a state-law claim for negligence against the Sheriff in his official capacity.

---

[3] Barnes and Scott filed answers to the Complaint and have not sought dismissal. See Defendant Officer J.M. Barnes' Answer and Affirmative Defenses (Doc. 7), filed November 8, 2022; Defendant Officer A.G. Scott's Answer and Affirmative Defenses (Doc. 8), filed November 8, 2022. Shadmani's claims against the individual officers are therefore not before the Court at this time.

### III. Discussion

In the instant Motion, the Sheriff seeks to dismiss only the state-law claim in Count V, arguing that Shadmani has no viable claim for negligence or, in the alternative, that the claim is barred by the doctrine of sovereign immunity.[4] For the reasons that follow, the Court concludes that the Motion is due to be granted and Count V dismissed.

A suit against a public official in his official capacity is treated as a suit against the local government entity he represents, in this case the City of Jacksonville. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Owens v. Fulton Cnty., 877 F.2d 947, 951 n.5 (11th Cir. 1989). Although the State of Florida and its subsidiaries such as municipalities are generally immune from tort liability, Florida has waived its immunity "under circumstances in which the state agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001) (quoting Fla. Stat.

---

[4] In a heading of his argument, the Sheriff asserts that Count V fails to state a claim "under Section 1983." See Motion at 5. Although Shadmani does bring a claim for municipal liability under § 1983, it is pleaded in Count III, not Count V. See Complaint ¶¶ 52–59. The heading thus appears to be an error. Indeed, the Sheriff specifically contrasts the other counts with Counts IV and V because the latter are "state tort law claims . . . for battery and negligence, respectively." Motion at 2. Of these two state-law claims, the Sheriff only requests dismissal of Count V—the negligence claim. See id. at 8 (arguing—in conclusion—that "Count V of the Plaintiff's Complaint is due to be dismissed"). The Court does not interpret the Sheriff's Motion as seeking dismissal of Count III, and thus does not address Shadmani's § 1983 arguments. See Response at 4–6 (responding to the contention that Count V fails to state a claim "under Section 1983").

§ 768.28(1)). Thus, when presented with a negligence suit against a state or its subsidiary, the Court "should first determine whether the circumstances alleged would subject a private person to liability under Florida law." Id. (citing Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989)). If the plaintiff can meet this burden, then the Court must decide "whether the challenged actions are nonetheless acts which required the exercise of basic governmental discretion, as opposed to implementation of an already established policy." Lewis, 260 F.3d at 1262. A "governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1117 (11th Cir. 2005) (quoting Lewis, 260 F.3d at 1266); see also Gelbard v. City of Miami, 845 F. Supp. 2d 1338, 1340 (S.D. Fla. 2012) (quoting Lewis, 260 F.3d at 1264).[5] Accordingly, the Court begins with Shadmani's allegations of negligence before turning to the question of sovereign immunity.

Shadmani's specific theory of negligence is unclear. The allegations in Count V of the Complaint could be understood to assert negligence by the individual officers (under a respondeat superior theory[6]), negligent training by

---

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

[6] Under Florida law, a municipality can be vicariously liable for the tortious acts of its employees. See Young v. Borders, No. 5:13-cv-113-Oc-22PRL, 2014 WL 11444072, at *21 (M.D. Fla. Sept. 18, 2014); Saballos v. Bonilla, No. 05-21928-CIV, 2006 WL 3940552, at *8

JSO, or negligent supervision by JSO.  See Complaint ¶ 68 (asserting that the officers "breached the duty owed to Mr. Shadmani" by using unnecessary force); id. ¶ 69 (asserting that "JSO breached the aforementioned duties" by, among other things, "training Barnes and Scott to unreasonabl[y] use force on suspects," "not training or supervising Barnes and Scott on reasonable uses of force," choosing not to teach de-escalation techniques, and "condoning" the use of unreasonable force against Shadmani).[7]  In his Response, Shadmani elaborates on his claim in this count by asserting that the Sheriff, in his official capacity, "breached [his] duty of care owed to [Shadmani] by negligently failing to properly train and supervise Officer Barnes and Officer Scott, and by allowing unreasonable use of force as a pattern and protocol at JSO."  Response at 4.

As an initial matter, the Court notes that Shadmani does not allege any facts suggesting that the individual officers were negligent, only that they used

---

(S.D. Fla. Dec. 5, 2006).

[7] The Court notes that Shadmani also appears to argue for municipal liability on the grounds that the Sheriff allowed "unreasonable use of force as a pattern and protocol" and "condon[ed] Barnes and Scott's unreasonable use of force."  See Complaint ¶ 69; Response at 6.  These assertions appear to simply restate the argument that JSO negligently trained officers to use excessive force.  It is also unclear why "condoning Barnes and Scott's unreasonable use of force" would give rise to negligence liability, partly because Shadmani does not explain how the Sheriff condoned it.  See id.  To the extent that Shadmani asserts that JSO's policies violated his federal rights or seeks to impose liability on the city based on the officers' actions, he has already brought those claims in Counts III and IV, respectively—counts which the Sheriff has not moved to dismiss.  See Complaint ¶¶ 52–64.  Otherwise, this assertion appears equally duplicative of the negligent training theory.

excessive force.[8]  "The Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'"  See Secondo v. Campbell, 327 F. App'x 126, 131 (11th Cir. 2009) (per curiam) (quoting City of Miami v. Sanders, 672 So. 2d 46, 48 (Fla. 3d DCA 1996).[9]  However, "'a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force, . . . [but] the negligence component must pertain to something other than the actual application of force during the course of arrest.'"  Id. (quoting Sanders, 672 So. 2d at 48).  For example, "a cause of action for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim" is recognized under Florida law.  See Lewis, 260 F.3d at 1263; see also Wyatt v. City of Jacksonville, No. 3:08-cv-264-J-32TEM, 2008 WL 2916358, at *1 (M.D. Fla. July 29, 2008) (finding that the plaintiff adequately stated a claim for negligent handling of a police dog).  Here, Shadmani alleges that the individual officers

---

[8] Shadmani clarifies in his Response that he is not employing a "negligent arrest" theory of liability.  See Response at 4.  For the sake of completeness, however, the Court nonetheless considers the assertion that the individual officers "breached the duty" to "use reasonable care in effectuating [Shadmani's] seizure."  See Complaint ¶¶ 67–68.

[9] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point.  See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

breached their duty of care by "unnecessarily tasing" him, "tackling him, mounting him and punching" him repeatedly. Complaint ¶ 68. All of Shadmani's allegations, accepted as true, assert that Shadmani was subjected to intentional acts of force, not negligence. Accordingly, Shadmani's allegations do not plausibly plead a claim of negligence.

The Court turns next to Shadmani's negligent supervision theory. See Id. ¶ 69; Response at 4. "'To state a cause of action for negligent supervision or negligent retention under Florida law the claimant must allege: (1) the existence of a relationship giving rise to a legal duty to supervise; (2) negligent breach of that duty; and (3) proximate causation of injury by virtue of the breach.'"[10] Atmore v. City of Lake Wales, No. 8:08-cv-2320-T-27EAJ, 2009 WL 10670908, at *3 (M.D. Fla. Dec. 1, 2009) (quoting Albra v. City of Ft. Lauderdale, 232 F. App'x 885, 888 (11th Cir. 2007)). To establish the employer's negligence, a plaintiff must show that "during the course of employment, the employer [became] aware or should have become aware of problems with an employee that indicated his unfitness, and the employer [failed] to take further action such as investigating, discharge, or reassignment." See Groover v. Polk Cnty. Bd. of Comm'rs, 460 F. Supp. 3d

---

[10] Under Florida law, "[n]egligent supervision is the same cause of action as negligent retention." See Groover v. Polk Cnty. Bd. of Comm'rs, 460 F. Supp. 3d 1242, 1251 (M.D. Fla. 2020).

1242, 1251 (M.D. Fla. 2020) (quoting <u>Degitz v. S. Mgmt. Servs., Inc.</u>, 996 F. Supp. 1451, 1461 (M.D. Fla. 1998)).  Here, however, Shadmani does not plead any facts suggesting that JSO was or should have been aware of prior misconduct by Barnes or Scott.  Although Shadmani provides examples of alleged misconduct by JSO employees, only three such employees are identified—none of whom Shadmani alleges to have been involved in his arrest. <u>See</u> Complaint ¶¶ 28–36 (listing prior incidents); <u>see also</u> <u>id.</u> ¶¶ 29, 32 (describing alleged misconduct by "Police Lieutenant R.W. Beltz," "Police Officer C.M. Weippert," and "Police Officer R.J. Tolen").  On this point, Shadmani argues that the "discovery phase has not yet begun," and he thus has not been able to depose the Sheriff regarding "any notices of prior instances of unfitness in either of these Officers."  Response at 5–6.  The problem with this argument is that it places the discovery cart before the pleading horse.  The Supreme Court in <u>Twombly</u> expressly stated that a mere "formulaic recitation of the elements of a cause of action will <u>not</u> do."  <u>Twombly</u>, 550 U.S. at 555 (emphasis added).  Shadmani must plead sufficient facts in his Complaint to survive a motion to dismiss in order to proceed with discovery.  At least as to his negligent supervision claim in Count V, he has not done so.

Finally, the Court turns to Shadmani's theory that the Sheriff breached his duty of care either by actively training individual officers to use excessive force, or by failing to train them on reasonable force and "de-escalation

- 11 -

techniques." See Complaint ¶ 69. In general, under Florida law, an employer is liable "for reasonably foreseeable damages resulting from the negligent training of its employees and agents." Lewis, 260 F.3d at 1265. Here, although his allegations are rather conclusory, Shadmani arguably states a claim against the Sheriff which would subject a private person to liability. Thus, the Court moves to the second step of the sovereign immunity analysis and considers whether the challenged actions were an exercise of governmental discretion. Lewis, 260 F.3d at 1262.

"[A] governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions, such as development and planning of governmental goals and policies." Id. at 1266. In Lewis, the Eleventh Circuit explained that "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." See id. On the other hand, a challenge to the implementation or operation of a city's policies or training program would involve operational actions for which the city would not have sovereign immunity. See id. Here, Shadmani's negligent training claim relates to the Sheriff's decisions about how to train officers and what subject matter to include in the training, see

Complaint ¶ 69, and that action is discretionary in nature.[11]  See Lewis, 260 F.3d at 1266.  Thus, to the extent that Shadmani alleges that the Sheriff negligently trained JSO officers, his state-law claim is barred by sovereign immunity and due to be dismissed.[12]

## IV. Conclusion

Because Shadmani fails to state a claim in Count V, the Motion is due to be granted, and Count V of the Complaint will be dismissed.

Accordingly, it is

**ORDERED:**

1. The Clerk of the Court is directed to update the caption of the case to substitute T.K. Waters in place of Pat Ivey as the Sheriff of the City of Jacksonville.

---

[11] Shadmani also pleads, in the alternative, that the officers "misunderstood their training by JSO." Complaint ¶ 70. However, Shadmani does not allege any facts suggesting that any such misunderstanding resulted from JSO's negligence in the implementation or operation of any policy or training program. Accordingly, this alternative theory is insufficient to support a claim of negligence against the Sheriff.

[12] As described above, however, the Sheriff has only sought the Court's dismissal of Shadmani's state-law negligence claim in Count V. See Motion at 1–2, 8. Dismissal of Count V does not prevent Shadmani from challenging the Sheriff's training policies. It simply means that he must do so through his § 1983 claim in Count III, not his state-law negligence claim in Count V. Indeed, state-law sovereign immunity "has no application to claims . . . under Section 1983." Hufford v. Rodgers, 912 F.2d 1338, 1341 & n.1 (11th Cir. 1990); see also Connor v. Halifax Hosp. Med. Ctr., 135 F. Supp. 2d 1198, 1223 (M.D. Fla. 2001) (rejecting a state agent's assertion of immunity under section 768.28(9)(a) in response to a § 1983 claim).

2. Defendant Sheriff T.K. Waters' Motion to Dismiss Count V of Plaintiff's Complaint and Supporting Memorandum of Law (Doc. 9) is **GRANTED**.   Count V of the Complaint is **DISMISSED**.

3. Sheriff Waters shall answer the Complaint on or before **April 17, 2023**.

**DONE AND ORDERED** in Jacksonville, Florida, this 28th day of March, 2023.

*[signature]*

MARCIA MORALES HOWARD
United States District Judge

lc31

Copies to:

Counsel of Record